
UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| LEZLIE J. BURNS,<br><br>             Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security, Office of General Counsel, Social Security Administration,<br><br>             Defendant. | 1:18-CV-01015-CBK<br><br><br><br>ORDER |

## BACKGROUND

Plaintiff brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to obtain judicial review of the final decision denying plaintiff's claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This is plaintiff's first claim for disability benefits and first request for judicial review of the denial of her disability benefits. For the reasons stated below, the decision of the Commissioner is reversed and remanded for further administrative proceedings.

Plaintiff was born in 1964, has earned a high school degree, and is married without children. From 2009-2015, plaintiff worked full-time at Redlinger Brothers Plumbing and Heating; since 2015, plaintiff has worked part-time at Simply Gorgeous Medical Spa. Plaintiff alleges that she left Redlinger Brothers because worsening ailments interfered with her ability to adequately perform her duties. Plaintiff also states that she is now frequently compensated for time that she

does not work at Simply Gorgeous Medical Spa. Plaintiff has provided affidavits from her employers in support of these statements.

Plaintiff filed a claim for disability benefits on March 30, 2015, for endometriosis, internal bleeding due to scar tissue, hearing and vision problems, stomach pain, problems with hip and back, pulmonary embolism, osteoporosis, and interstitial cystitis, alleging disability since February 4, 2015. Plaintiff's claim was denied by the Social Security Administration on June 25, 2015, on the following basis:

> There is no indication of nerve or muscle damage which would result in severe weakness or loss of function. There is no indication of joint damage which would result in severe weakness or loss of function. Although you have pain, it does not severely limit most ordinary activities. Your visual loss is not severe enough to limit most ordinary activities. Although you have some shortness of breath, the medical evidence does not show a severe reduction in the ability to breathe. Although you have hearing loss, it does not severely limit your ability to work. The reports do not show any other condition that would severely limit the ability to work. We do not have sufficient vocational information to determine whether you can perform your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. Considering medical records, age, education and work history, we have concluded that you are able to do work that is light in nature.

Plaintiff filed a request for reconsideration and her claim was again denied, on October 5, 2015, on the following basis:

> There is no indication of nerve or muscle damage which would result in severe weakness or loss of function. There is no indication of joint damage which would result in severe weakness or loss of function. Although you have pain, it does not severely limit normal daily activities. Your visual loss is not severe enough to limit most ordinary activities. Special tests show sufficient hearing to understand and carry on normal conversation. Although you have some shortness of breath, the medical evidence does not show a severe reduction in the ability to breathe. The reports do not show any other condition that would severely limit the ability to work. We

2

> do not have sufficient vocational information to determine whether you can perform your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Kristi Bellamy reaffirmed the denial of plaintiff's claim for benefits on May 1, 2017. Plaintiff then filed a request for review by the Appeals Council, which adopted the ALJ's denial of plaintiff's application for benefits on April 10, 2018. Plaintiff has thus exhausted administrative review of her claim.

On May 8, 2018, plaintiff filed the current request for judicial review, claiming that (1) the residual functional capacity ("RFC") determined by the ALJ is not supported by substantial evidence; (2) that the ALJ failed to identify all of plaintiff's severe impairments and incorporate them into her RFC; and (3) that the ALJ erred by relying on vocational evidence that was not supported by substantial evidence. In response to plaintiff's appeal for judicial review, defendant requests that this court uphold the Commissioner's disability determination, stating that (1) substantial evidence supports the ALJ's RFC finding; (2) the ALJ did not fail to identify all of plaintiff's severe impairments; and (3) the ALJ properly determined that plaintiff could perform other work available in significant numbers in the national economy.

Each of these arguments is addressed in the context of the five-step disability determination process, discussed below.

## DECISION

### I. Standard of Review

A court reviewing a disability benefits determination must "neither consider a claim *de novo*, nor abdicate its function to carefully analyze the entire record." Mittlestedt v. Apfel, 204 F.3d 847, 851 (8th Cir. 2000). Rather, the reviewing court must consider both evidence that

3

detracts from the Commissioner's decision along with evidence that supports it. Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009). Such review "is more than a search of the record for evidence supporting the [Commissioner's] findings" and "requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner's] action." Scott ex rel. Scott v. Astrue, 529 F.3d 818, 821 (8th Cir. 2008) (internal citations omitted). A Commissioner's findings must be upheld so long as they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); and Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001). Substantial evidence is that which "a reasonable mind might accept as adequate to support the Commissioner's conclusion." Klug v. Weinberger, 514 F.2d 423, 425 (8th Cir. 1975) (internal citations omitted). The reviewing court may not reverse a Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). Instead, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The reviewing court "must view the record in the light most favorable to [the final agency] determination." Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018).

The reviewing court must also review the ALJ's decision to determine if the ALJ committed an error of law or applied an erroneous legal standard. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992); and 42 U.S.C. § 405(g). Deference is given to the Commissioner's construction of the Social Security Act. Smith v. Sullivan, 982 F.2d at 311. However, the Commissioner's conclusions of law are persuasive, not binding, on the reviewing court. *Id.*; *see also* Miller v. Colvin, 114 F.Supp.3d 741, 760 (D.S.D. 2015). If an opinion evidences "[s]everal

errors and uncertainties . . . that individually might not warrant remand" such errors and uncertainties may "in combination create sufficient doubt about the ALJ's rational for denying [an applicant's] claims to require further proceedings." Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008).

## II. The Five Step Process for Disability Determination

Social Security law establishes a mandatory five step process for determining whether an applicant is disabled and entitled to SSI benefits. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993); and 20 C.F.R. § 416.920. The five step sequential evaluation process may be summarized as follows:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

The plaintiff bears the burden of proof for steps one through four of the five step inquiry, while the Commissioner bears the burden of showing, at step five, that "jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." Sultan v. Barnhart, 368 F.3d 857, 864 (8th Cir. 2004); Mittlestedt, 204 F.3d at 852.

Where the record is insufficient to determine whether a claimant is disabled, the ALJ "must develop the record by seeking additional evidence or clarification" as to "crucial issues." Webb v. Berryhill, 294 F.Supp.3d 824, 878 (D.S.D. 2018). Such development may require requesting

medical records or ordering a consultative exam. *Id.* An ALJ "bears a responsibility to develop the record fairly and fully" regardless of whether the claimant is represented by an attorney. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).

**III. The ALJ's opinion failed to consider the record as a whole in accordance with the five step process**

This court finds that the ALJ's opinion failed to consider the record as a whole in accordance with the five-step sequential evaluation of plaintiff's claims. The ALJ's sequential evaluation findings and plaintiff's dispute as to these findings are set forth in what follows.

**a. Step One**: The ALJ found that the claimant has not engaged in Substantial Gainful Activity since the alleged onset of disability. Plaintiff does not dispute the step one finding.

**b. Step Two**: The ALJ found that plaintiff has the following severe impairments: history of pulmonary embolism, interstitial cystitis, endometriosis, vitamin D deficiency secondary to gastric bypass, amblyobia of the left eye, and congenital bilateral hearing loss. The ALJ determined that plaintiff's history of back pain, osteoporosis, and osteoarthritis did not suggest severe disc disease or arthritis and that plaintiff has not sought treatment for her pain—such as injections, physical therapy, or surgical consultation—beyond chiropractic care. As such, the ALJ determined these ailments are not severe. The ALJ also determined that plaintiff's sleep apnea was noted in her medical records as mild, and that it was therefore not severe. Finally, the ALJ determined that plaintiff's nosebleeds are non-severe; however, the ALJ stated that, because plaintiff's chemical cauterization of blood vessels in her nose alleviated this condition, "the undersigned also finds that this impairment, considered singly or in combination with others, would more than minimally impact her ability to perform work-related activities." The ALJ apparently intended this statement to say the opposite—that plaintiff's nosebleeds would *not* more than minimally impact her ability

to perform work-related activities. The ALJ's failure to correctly articulate the rationale for finding that plaintiff's nosebleeds are not severe is consonant with other errors in the ALJ's opinion.

Plaintiff disputes the ALJ's findings that her back pain is not severe, pointing to findings by the state agency physicians that plaintiff's "disorders of back – discogenic and degenerative" are severe. While ALJs "must consider" prior administrative medical evidence, ALJs "are not required to adopt any prior administrative medical findings." RIN 0960-AH51, 81 Fed. Reg. 62560 (Sept. 9, 2016). Plaintiff cites evidence regarding records in plaintiff's file of shoulder and arm pain, but has not otherwise provided evidence that plaintiff's back pain should be considered a severe impairment.

Plaintiff further states that the ALJ's assertion that plaintiff had not sought additional treatment for her osteoporosis and back pain is unsupported, as plaintiff received Prolia injections until "she could no longer afford them." Prolia injections may indeed be used to treat osteoporosis and associated back pain. However, "if an impairment can be controlled by treatment or medication, it cannot be considered disabling." Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir.2010) (*citing* Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir.2004)). Indeed, "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.'" Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (*quoting* Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995)). Plaintiff claims to be unable to pay for such injections, but the court notes repeated reference in plaintiff's file to vacations outside the state. While an inability to pay for treatment may be a "justifiable cause for noncompliance," if a record contains evidence that is inconsistent with claims of lack of financial resources, "it is not error for an ALJ to rely on noncompliance as one of the reasons for rejecting a finding of

disability." Schake v. Berryhill, 2018 WL 4469250, *6 (D. Minn. Sept. 18, 2018) (*quoting* Brown v. Barnhart, 390 F.3d at 540).

Nonetheless, claimants "should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment," as "[t]he record must reflect as clearly and accurately as possible the claimant's or beneficiary's reason(s) for failing to follow the prescribed treatment." SSR 82-59, 1975-1982 Soc.Sec.Rep.Serv. 793 (1982). Claimants should further "be made aware that the information supplied will be used in deciding the disability claim" *before* the determination of eligibility for benefits. *Id.*; and Webb v. Berryhill, 294 F. Supp. 3d 824, 891 (D.S.D. 2018). This process ensures fundamental fairness as "once a disability application is denied, the claimant may not later undertake to follow the treatment recommendation and revise the adverse determination." *Id.* Here, the ALJ failed to inform plaintiff prior to the determination of her eligibility for benefits that the failure to receive treatment may affect the outcome of that determination. While this error alone may not otherwise warrant remand, as the ALJ did not consider plaintiff's muskuloskeletal impairments severe, because, as will be discussed further below, this court is ordering remand, *inter alia*, to reconsider plaintiff's RFC and whether her diagnosis of interstitial cystitis is medically equivalent to a listed impairment, the ALJ should also provide plaintiff an opportunity to explain her failure to follow her treatment plan, as it is possible that such failure would affect the ALJ's ultimate finding of plaintiff's RFC.

This court also notes that the ALJ did not consider evidence that plaintiff is obese at step two. The failure to consider whether an impairment is severe at step two affects the outcome of a disability determination where, as will be discussed in more detail below, the ALJ also fails to consider that impairment, whether ultimately determined as severe or non-severe, in the RFC assessment. *See, e.g.*, Webb v. Berryhill, 294 F.Supp.3d 824, 878 (D.S.D. 2018). SSR 02-1p,

8

Evaluation of Obesity, establishes three levels of obesity: BMIs of 30.0-34.9 (Level I); BMIs of 35.0-39.9 (Level II); and BMIs greater than or equal to 40.0 (Level III). SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Despite frequently refusing to be weighed, plaintiff's medical records provide ample evidence of Level I and Level II obesity for over a 26-month period:

- BMI 30.34, Brown Clinic, January 19, 2015 (Tr. 437);
- BMI 30.68, Brown Clinic, February 17, 2015 (Tr. 428);
- BMI 30.96, Brown Clinic, July 24, 2015 (Tr. 518);
- BMI 31.38, Brown Clinic, October 9, 2015 (Tr. 695);
- BMI 34.0, Brown Clinic, February 26, 2016 (Tr. 675);
- BMI 32.93, Brown Clinic, January 23, 2016 (Tr. 681);
- BMI 34.0, Brown Clinic, May 19, 2016 (Tr. 662);
- BMI 33.83, Brown Clinic, June 17, 2016 (Tr. 656);
- BMI 33.83, Brown Clinic, July 29, 2016 (Tr. 648);
- BMI 36.2, Avera Medical Group, August 19, 2016 (Tr. 591);
- BMI 35.46, Brown Clinic, August 25, 2016 (Tr. 640);
- BMI 35.89, Brown Clinic, September 13, 2016 (Tr. 633);
- Weight 208 lbs, Height 5'2", Prairie Lakes Pulmonology Clinic, February 17, 2017 (Tr. 817); and
- Weight 207, Height 62", Precision Diagnostic Services, March 16, 2017 (Tr. 823).

While plaintiff's weight is occasionally recorded below these levels, "minor, short-term weight loss" is not considered when determining whether an individual has obesity "as long as his or her weight or BMI shows essentially a consistent pattern of obesity." *Id.* Although there is "no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment," the existence of plaintiff's obesity must nonetheless be considered. *Id.*

**c. Step Three**: The ALJ found that plaintiff does not have any impairment or combination of impairments that is found in the list of disabling impairments established by the Social Security Administration in 20 CFR Part 404, Subpart P, Appendix 1. Specifically, the ALJ found that plaintiff does not meet the requirements of Listings 2.00, Special Senses and Speech; 3.00, Respiratory Disorders; or SSR 15-1p, Evaluating Cases Involving Interstitial Cystitis. According to SSR 15-1p, interstitial cystitis may co-occur with endometriosis, low back pain, sleep

9

dysfunction, and chronic tiredness—all recorded complaints in the instant case. An ALJ is required, per SSR 15-1P, Evaluating Cases Involving Interstitial Cystitis (IC), to "compare the specific findings in each case to any pertinent listing to determine whether medical equivalence may exist." SSR 15-1P, 2015 WL 1292257, *8 (March 18, 2015). Although the ALJ cites the SSR, it is not clear which listed impairments, if any, she considered when evaluating plaintiff's interstitial cystitis. The ALJ does not appear to have considered what are likely the most probable listings to include a medical equivalence: Listings 6.00 - Genitourinary Disorders; 5.00, Digestive System; or 1.00, Musculoskeletal System. This court notes, further, that it is not transparent that the ALJ considered the combination of all of plaintiff's impairments in the analysis of whether plaintiff meets a disabling impairment.

**d. Step Four**: The ALJ found that plaintiff has the RFC to perform less than a full range of light work as defined in 20 CFR 404.1567(b). Notably, the ALJ found that plaintiff "cannot work in a job that requires fine visual acuity, use of a computer on more than an occasional basis, or driving as part of the job" and that plaintiff "should avoid exposure to loud noise and even moderate exposure to hazards such as unprotected heights and dangerous machinery." Plaintiff disputes that the ALJ's findings are based on substantial evidence, specifically stating that the ALJ failed to consider plaintiff's hearing loss limitations in determining the RFC. While the ALJ acknowledged that plaintiff should avoid exposure to loud noise, plaintiff argues that this environmental limitation is not the limitation supported by substantial evidence; rather, the ALJ should have considered limitations related to phone use, word recognition, and hearing loss in general.

Plaintiff points to the state agency physicians' findings at the initial and reconsideration level that plaintiff should "avoid noisy environments" and "even moderate exposure" to noise. As

discussed above, however, the ALJ is "not required to adopt any prior administrative medical findings." RIN 0960-AH51, 81 Fed. Reg. 62560 (Sept. 9, 2016). An ALJ must also take into account reports of nonmedical sources, such as employers, to the extent such evidence is "consistent with the objective medical evidence and other evidence." *Id.*; *see also* 20 C.F.R. § 404.1529(4). The ALJ properly accorded opinions provided by plaintiff's employers limited weight, as these positions exceeded plaintiff's RFC as found by the ALJ and were inconsistent, with regard to her auditory recognition, with other records in the plaintiff's file. Indeed, plaintiff's initial disability determination explanation, dated June 25, 2015, indicates that plaintiff "only asked [the state agency physician] to repeat [himself] a few times" during an "approximate 30 minute phone interview." Tr. 93. Records from Professional Hearing Services, Inc., also indicate that patient has experienced at least some improvement with her hearing aids upon adjustment. Tr. 606. None of the occupations the ALJ found plaintiff could perform require frequent or constant hearing comprehension according to the Dictionary of Occupational Titles. For these reasons, this court holds that the ALJ's evaluation of plaintiff's hearing loss was not in error.

The ALJ's RFC finding "must include the limitations from all medically determinable impairments, regardless of whether they are considered severe." Miller v. Colvin, 114 F.Supp.3d 741, 779 (D.S.D. 2015). As noted above, an ALJ must consider the real functional limitations imposed by obesity in the determination of a claimant's RFC. Webb at 880. An ALJ should assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Where a plaintiff's record indicates a history of obesity, "fatigue may affect the individual's physical and mental ability to sustain work activity . . . particularly . . . in cases involving sleep apnea." *Id.* The ALJ does not dispute plaintiff's diagnosis of sleep apnea. It is common knowledge

that sleep apnea, if untreated, presents serious risks. It is, however, easily treatable by use of a "sleep machine." Moreover, because obesity "affects the cardiovascular and respiratory systems" as a result of "the increased workload the additional body mass places on these systems," the ALJ's failure to consider plaintiff's obesity in determining her RFC is particularly significant in light of the ALJ's finding that plaintiff's pulmonary embolism is severe.

**e. Step Five**: The ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform: namely, garment tagger, inserter, and mail clerk, with respectively 900, 2,300, and 4,000 jobs regionally. Plaintiff contends that the ALJ improperly relied on vocational evidence that was not supported by substantial evidence in making this finding. Specifically, plaintiff states that the occupations of inserter and mail clerk are both defined in the Dictionary of Occupational Titles ("DOT") to require "frequent near acuity," although the ALJ's hypothetical to the vocational expert assumed an individual who "[c]annot work in a job that requires fine visual acuity." Defendant does not dispute that these occupations require frequent near acuity.

As plaintiff notes, SSR 00-4p establishes an affirmative duty for the ALJ "to ask [the vocational expert] about any possible conflict between that [vocational expert's] evidence and information provided in the DOT." SSR 00-4P, 2000 WL 1898704, *4 (Dec. 4, 2000). Although the ALJ in the instant case did request that the vocational expert advise her as to any conflict with his testimony and the information in the DOT, this does not absolve the ALJ from the duty to confirm that the vocational expert's testimony does not conflict with information provided in the DOT. Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014) (holding that, where the record does not reflect whether the vocational expert or ALJ even recognized a possible conflict between the ALJ's hypothetical and the DOT listing, the case should be remanded for further

proceedings). Here, the ALJ states that "the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]," but, as plaintiff points out, this is not the case.

Defendant contends that the ALJ's exception of jobs that require fine visual acuity from those plaintiff would be able to perform, as articulated in the ALJ's RFC finding, "is a scrivener's error and is, therefore, harmless." This court is not so persuaded. While it is true that "a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case," nevertheless, "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal citations omitted). Defendant argues that, because the vocational expert testified to one job that plaintiff could perform that did not require frequent near visual acuity, defendant's burden to demonstrate that there are sufficient jobs in the national economy that plaintiff could perform has been met. Neither of the cases that defendant cites in support of this proposition—Johnson v. Chater, 108 F.3d 178 (8th Cir. 1997); and Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519 (9th Cir. 2014)—track the facts at issue here, where, exclusive of jobs that require visual acuity, the vocational expert identified one job that plaintiff could perform in the national economy. Moreover, the ALJ's failure to fulfill her affirmative duty to resolve the conflict between the vocational expert's testimony and the DOT, as required by SSR 00-4p, itself suggests that reversal is warranted. As such, this case should be remanded to clarify whether plaintiff can or cannot perform jobs that require fine visual acuity and, if not, which jobs in the national economy she could perform.

**IV. Remand is Appropriate for Further Administrative Findings**

Where, as here, a district court makes a substantive ruling regarding the correctness of the Social Security Commissioner's decision and determines that benefits have been improperly denied, the appropriate course of action is to remand for further administrative findings. Buckner v. Apfel, 213 F.3d 1006, 1010-11 (8th Cir. 2000). Remand with the instructions to award benefits is only proper where "the record overwhelmingly supports such a finding." *Id.* Here, remand is warranted because the record evidence should be clarified and correctly evaluated. The sum of the errors evident in this decision persuade this court that the case should be remanded. *See* Willcockson, *supra.*

### V. Award of Attorney's Fees under the Equal Access to Justice Act

Plaintiff's complaint requests that the court award attorney's fees under the Equal Access to Justice Act (the "Act"), 28 U.S.C. § 2412(d). In accordance with 28 U.S.C. § 2412(d)(1)(B), "[a] party seeking an award of fees and other expenses" must "submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award" under the Act, "within thirty days of final judgment in the action," among other requirements. This should of course be accomplished via motion.

### VI. Conclusion

In conclusion, remand is warranted so that the ALJ may provide plaintiff the opportunity to explain why she did not obtain prescribed Prolia injections and to reconsider whether the plaintiff's interstitial cystitis is severe enough to be medically equivalent to a disability listing. Remand is also warranted so that the ALJ may consider plaintiff's residual functional capacity in light of evidence that plaintiff suffers from obesity. Finally, further proceedings are required to determine whether plaintiff may or may not perform jobs that require fine visual acuity and, if not, which jobs in the national economy plaintiff could perform.

**ORDER**

Now, therefore,

IT IS ORDERED:

1. Plaintiff's motion to reverse the decision of the Social Security Commissioner or remand, Doc. 12, is denied in part and granted in part: the Court declines to direct an award and remands this case for further development and reconsideration in light of the issues raised herein.

Dated this 11th day of October, 2018.

BY THE COURT:

*Charles B. Kornmann*

CHARLES B. KORNMANN
United States District Judge